UNITED STATES DISTRICT COURT
DISTRICT OF NEW JERSEY

| | |
|---|---|
| NU SPINE LLC,<br><br>    Plaintiff,<br>v.<br><br>UNITED HEALTHCARE SERVICES, LLC, UNITED HEALTHCARE INSURANCE COMPANY, JOHN DOE 1-10 (names being fictious), and ABC CORPORATION 1-10 (names being fictious).,<br><br>    Defendants. | Civil Action No. 24-6435 (JXN) (LDW)<br><br>**OPINION** |

**NEALS**, District Judge:

This matter comes before this Court on Defendant UnitedHealthcare Service LLC s/h/a United Healthcare Services, LLC's ("Defendant") motion to dismiss Plaintiff NU Spine LLC's ("Plaintiff") Amended Complaint (ECF No. 1-1) ("Amended Complaint" or "Am. Compl.") pursuant to Federal Rule of Civil Procedure 12(b)(6). (ECF No. 16). Jurisdiction and venue are proper pursuant to 28 U.S.C. §§ 1332 and 1441(a), respectively. The Court has considered the submissions made in support of and in opposition to the motion and decides this matter without oral argument pursuant to Federal Rule of Civil Procedure 78 and Local Rule of Civil Procedure 78.1. For the reasons set forth below, Defendant's motion to dismiss (ECF No. 16) is **DENIED**.

**I.  BACKGROUND AND PROCEDURAL HISTORY**

Plaintiff is a New Jersey limited liability company which "specializes in the practice of spinal surgery" in New Jersey.[1] (Am. Compl. ¶¶ 1, 4). On or about March 13, 2023, Plaintiff

---

[1] The following factual allegations are taken from the Amended Complaint that are accepted as true. *Sheridan v. NGK Metals Corp.,* 609 F.3d 239, 262 n.27 (3d Cir. 2010).

alleges that one of its physicians performed a two-pronged surgery for Patient involving an anterior lumbar interbody fusion ("ALIF") and a posterior lumbar interbody fusion ("PLIF"). (*Id.* at ¶ 5). The surgery was billed as follows: (i) $228,000.00 for the ALIF portion of Patient's surgery and (ii) $302,150.00 for the PLIF portion of Patient's surgery. (*Id.*) At all relevant times, Patient was a beneficiary of a health insurance plan administered by Defendant, "a plan for employees of Port Authority of NY & NJ." (*Id.* at ¶ 6). While Plaintiff is an out-of-network provider with Defendant, the surgery was performed at Hudson Regional Hospital, an in-network facility. (*Id.* at ¶ 8)

According to the Amended Complaint, the parties were able to negotiate payments for the ALIF and PLIF portions of Patient's surgery. (*Id.* at ¶¶ 12-13). For the ALIF portion, the parties negotiated payment in the amount of $189,750.00, which was confirmed in a written Single Case Agreement. (*Id.* at ¶ 12). For the PLIF portion, the parties negotiated payment in the amount of $207,862.50, which was confirmed in a written Single Case Agreement. (*Id.* at ¶ 13). Plaintiff alleges, on or about July 27, 2023, Defendant issued Plaintiff payment in the amount of $207,862.50 for the PLIF portion of the surgery. (*Id.* at ¶ 15). However, Plaintiff alleges Defendant has failed to pay the agreed-upon amount for the ALIF portion of the surgery. (*Id.* at ¶¶ 17, 19). Rather, Plaintiff alleges Defendant has only issued payment in the amount of $3,037.77. (*Id.* at ¶ 17).

Further, the Amended Complaint alleges that since the Patient's surgery was performed at an in-network facility, notwithstanding Plaintiff being an out-of-network provider, the services trigger the Federal No Surprises Act ("NSA"). (*Id.* at ¶ 8). According to the NSA, Plaintiff alleges, as an out-of-network provider, that it "reserves the right to dispute an insurance carrier's reimbursement for qualifying out-of-network services and initiate a 30-day negotiation period." (*Id.* at ¶ 9). Plaintiff alleges by disputing Defendant's payment, it had initiated the negotiation

period called for by the NSA and if a resolution is not reached during the negotiation period, then the provider may elect to pursue arbitration to determine the reimbursement rate. (*Id.* at ¶¶ 10-11). Since the parties reached a resolution during the negotiation period, Plaintiff alleges it is precluded from initiating an arbitration. (*Id.* at ¶¶ 18-19).

On or about December 15, 2023, Plaintiff initiated an action against Defendant United Healthcare Insurance Company ("UHIC") by filing a Complaint in the Superior Court of New Jersey, Hudson County, Law Division. (*See* Declaration of Matthew P. Mazzola ("Mazzola Decl."), Ex. 1, ECF No. 16). On or about April 1, 2024, Plaintiff filed an Amended Complaint and added Defendant as a party to the action. (*See* ECF No. 1-1). Plaintiff asserts four causes of action against Defendant and UHIC: (i) breach of contract (Count One); (ii) unjust enrichment (Count Two); (iii) breach of the implied covenant of good faith and fair dealing (Count Three); and (iv) promissory estoppel (Count Four). (*See generally* Am. Compl.). On April 2, 2024, the parties filed a Stipulation of Dismissal with prejudice for all claims asserted against UHIC.[2] (*See* ECF No. 16-4). Thereafter, on May 24, 2024, this case was removed to this Court from the Superior Court of New Jersey, Hudson County, Law Division, based on diversity jurisdiction pursuant to 28 U.S.C. § 1332. (*See* ECF No. 1).

On August 2, 2024, Defendant filed a motion to dismiss the Amended Complaint. (ECF No. 16) ("Br."). Plaintiff opposed the motion (ECF No. 20) ("Opp'n"), to which Defendant replied. (ECF No. 26) ("Reply"). This matter is now ripe for consideration.

## II.     LEGAL STANDARD

Federal Rule of Civil Procedure 12(b)(6) governs motions to dismiss for "failure to state a claim upon which relief can be granted." For a complaint to survive dismissal under the Rule, it

---

[2] The Court notes that the Stipulation of Dismissal submitted by Defendant does not appear to have been signed by the judge in the State Court Action. (*See* ECF No. 16-4).

must contain sufficient factual matter to state a claim that is plausible on its face. *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (citing *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). A claim is facially plausible "when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.* Although the plausibility standard "does not impose a probability requirement, it does require a pleading to show more than a sheer possibility that a defendant has acted unlawfully." *Connelly v. Lane Constr. Corp.*, 809 F.3d 780, 786 (3d Cir. 2016) (cleaned up). As a result, a plaintiff must "allege sufficient facts to raise a reasonable expectation that discovery will uncover proof of [his or] her claims." *Id.* at 789.

In evaluating the sufficiency of a complaint, district courts must separate the factual and legal elements. *Fowler v. UPMC Shadyside*, 578 F.3d 203, 210-11 (3d Cir. 2009). Restatements of a claim's elements are legal conclusions, and therefore, not entitled to a presumption of truth. *Burtch v. Milberg Factors, Inc.*, 662 F.3d 212, 224 (3d Cir. 2011). The Court, however, "must accept all of the complaint's well-pleaded facts as true[.]" *Fowler*, 578 F.3d at 210. Even if plausibly pled, however, a complaint will not withstand a motion to dismiss if the facts alleged do not state "a legally cognizable cause of action." *Turner v. J.P. Morgan Chase & Co.*, No. 14-7148, 2015 WL 12826480, at *2 (D.N.J. Jan. 23, 2015).

### III.     DISCUSSION

#### A. The Amended Complaint Adequately Alleges Plaintiff and Defendant are Parties to a Single Case Agreement.

Defendant first argues this Court should dismiss the Amended Complaint because the allegations are all premised upon the Single Case Agreement that was entered between Plaintiff

4

and non-party Medical Audit & Review Solution ("MARS"). (Br. at 14-16).[3] While the Court may normally "not consider matters extraneous to the pleadings" at the motion to dismiss stage, the Court may rely on documents that are "*integral to or explicitly relied* upon in the complaint" without converting the motion into one for summary judgment. *In re Burlington Coat Factory Secs. Litig.*, 114 F.3d 1410, 1426 (3d Cir. 1997) (citations omitted). The exception's applicability turns on "whether the claims in the complaint are 'based' on an extrinsic document and not merely whether the extrinsic document was explicitly cited." *Id.* (citations omitted). However, "[w]hen the truth of facts in an 'integral' document are contested by the well-pleaded facts of a complaint, the facts in the complaint must prevail." *Doe v. Princeton Univ.*, 30 F.4th 335, 342 (3d Cir. 2022).

Here, the parties argue at length in their respective briefs varying interpretations of the language in the Single Case Agreement and whether Defendant is a party to the agreement. (*See* Br. at 14-20; Opp'n at 7-11). The Court declines, at the motion to dismiss stage, to analyze the language of the Single Case Agreement. Rather, as the parties contest the "truth of facts" of this "integral" document, the Court will focus its analysis on the allegations set forth in the Amended Complaint. *Doe*, 30 F.4th at 342. The Amended Complaint alleges the parties negotiated and entered into a Single Case Agreement for payment in the amount of $189,750.00 for the billed charges of $288,000.00 for the ALIF portion of Patient's procedure. (*See* Am. Compl. ¶ 12). As such, "the facts in the [Amended Complaint] must prevail" and the Court rejects Defendant's argument that the Amended Complaint must be dismissed because the Single Case Agreement was entered into by Plaintiff and non-party MARS. *Doe*, 30 F.4th at 342. Defendant may raise this argument at a later stage after the parties have engaged in discovery.

---

[3] For sake of clarity, when citing the parties' briefs and supporting documents, the Court cites to the page number listed in the ECF header. If there is no page number listed in the ECF header, the Court cites to the page number listed in the respective document.

### B. Plaintiff Adequately Alleges a Breach of Contract Claim (Count One).

Under New Jersey law, to state a claim for breach of contract, a plaintiff "must allege (1) a contract between the parties; (2) a breach of that contract; (3) damages flowing therefrom; and (4) that the party stating the claim performed its own contractual obligations." *Frederico v. Home Depot*, 507 F.3d 188, 203 (3d Cir. 2007) (citing *Video Pipeline, Inc. v. Buena Vista Home Ent., Inc.*, 210 F. Supp. 2d 552, 561 (D.N.J. 2002)).

As discussed *supra*, the Amended Complaint alleges Plaintiff and Defendant entered into a Single Case Agreement, whereby Defendant agreed to pay $189,750.00 for the billed charges of $288,000.00 for the ALIF portion of Patient's procedure. (*See* Am. Compl. ¶ 12). The Amended Complaint also alleges Defendant breached this contract by only issuing payment in the amount of $3,037.77, as opposed to agreed-upon amount $189,750.00. (*See id.* at ¶¶ 17, 19, 23). Further, the Amended Complaint alleges Plaintiff has been damaged at least $186,712.23, which is the alleged balance due and owed in accordance with the Single Case Agreement. (*See id.* at ¶ 26). Finally, the Amended Complaint alleges one of Plaintiff's physicians had already performed the procedure for Patient, and that "Defendant UHS has no basis for breaching the Single Case Agreement." (*See id.* at ¶¶ 5, 20). Accordingly, the Court denies Defendant's motion to dismiss Count One of the Amended Complaint.

### C. Plaintiff Adequately Alleges an Unjust Enrichment Claim (Count Two).

Unjust enrichment requires that the defendant "received a benefit and that the retention of that benefit would be unjust." *Thieme v. Aucoin-Thieme*, 151 A.3d 545, 557 (N.J. 2016). For this claim, a plaintiff must "'show that it expected remuneration from the defendant at the time it performed or conferred a benefit on defendant and that the failure of remuneration enriched defendant beyond its contractual rights.'" *Hughs v. Panasonic Consumer Elecs. Co.*, No. 10-846,

2011 WL 2976839, at *26 (D.N.J. July 21, 2011) (quoting *VRG Corp. v. GKN Realty Corp.*, 641 A.2d 519, 526 (N.J. 1994)).

Relying on a series of cases from this District, Defendant argues that "it is well settled that an insurance company derives no benefit from the services provided by the plaintiff/provider to the patient/insured." (Br. at 22); *see also Broad St. Surgical Ctr., LLC v. UnitedHealth Grp., Inc.*, No. 11-2775, 2012 WL 762498, at *8 (D.N.J. Mar. 6, 2012); *Plastic Surgery Ctr., LLC v. Oxford Health Ins., Inc.*, No. 18-2608, 2019 WL 4750010, at *5-6 (D.N.J. Sept. 30, 2019); *The Plastic Surgery Ctr., P.A. v. Cigna Health & Life Ins. Co., et al.*, No. 17-2055, 2019 WL 1916205, at *8 (D.N.J. Apr. 30, 2019). Each of these cases cited, however, predate the Third Circuit's decision in *Plastic Surgery Center, P.A. v. Aetna Life Insurance Company*, 967 F.3d 218 (3d Cir. 2020). In *Plastic Surgery Center*, the Third Circuit underscored that "where a healthcare provider claims unjust enrichment against an insurer, the benefit conferred, if any, is not the provision of the healthcare services *per se*, but rather the discharge of the obligation the insurer owes to its insured." 967 F.3d at 240. And because the obligation the insurer owes typically springs from a plan, the health provider must plausibly establish that a plan exists, the insurer "'received a benefit'—*i.e.*, the discharge of its duties under that plan," and that "retention of that benefit without payment would be unjust."[4] *Id.* at 241 (citations omitted).

At this stage, the Court finds Plaintiff has sufficiently pled allegations that Defendant retained a benefit under a plan without payment. Plaintiff alleges that Defendant's "unjust enrichment includes, but is not limited to, the retention of funds in Defendant UHS's account(s),

---

[4] While district courts in this Circuit have long held that benefits for medical services "inure[d] only to the patients treated," not the insurers, *see, e.g.*, *Plastic Surgery Ctr., LLC v. Oxford Health Ins., Inc.*, No. 18-2608, 2019 WL 4750010, at *6 (D.N.J. Sept. 30, 2019), at least one court in this District has interpreted the Third Circuit's decision in *Plastic Surgery Center* as opening the door for unjust enrichment claims against insurers. *See MHA, LLC v. Amerigroup Corp.*, 539 F. Supp. 3d 349, 361 (D.N.J. 2021) (citing *Plastic Surgery Ctr.*, 967 F.3d at 241 n.26).

7

which should have been remitted to Plaintiff in exchange for the services provided to Patient, a beneficiary of Defendant UHS." (Am. Compl. ¶ 38). Other courts have found similar allegations survive the motion to dismiss stage. *See, e.g.*, *Abire Med. Lab'ys, LLC v. Kaiser Found. Health Plan of Mid-Atl. States, Inc.*, 2024 WL 2188911, at *8 (denying a motion to dismiss the plaintiff's unjust enrichment claim where the plaintiff alleged that it "performed lab testing for [the defendant's] members, it conferred a benefit on [the defendant], and that [the defendant] unjustly retained that benefit by failing to compensate" the plaintiff; *Abira Med. Lab'ys, LLC v. CareSource*, No. 24-157, 2024 WL 4817444, at *6 (S.D. Oh. Nov. 18, 2024) (denying a motion to dismiss the plaintiff's unjust enrichment claim where the plaintiff alleged "that it conferred a benefit upon [the defendant] when it performed laboratory testing services, [the defendant] was aware of the benefits, and it was unjust for [the defendant] to 'fail[ ] and refus[e] to compensate [the p]laintiff' for its services").

Therefore, the Court denies Defendant's motion to dismiss Count Two of the Amended Complaint, but Defendant may renew its argument at a later stage based on a more fulsome record. *See Abire Med. Lab'ys, LLC v. Highmark W. and Ne. N.Y., Inc.*, No. 24-1888, 2025 WL 278633, at *6 (same).

### D. **Plaintiff Adequately Alleges a Breach of the Covenant of Good Faith and Fair Dealing Claim (Count Three).**

A plaintiff may assert a breach of the implied covenant of good faith and fair dealing claim where "a party has not violated a literal term of the agreement—which would give rise to a breach of contract claim—but has violated the spirit and purpose of the agreement." *Gap Props., LLC v. Cairo*, No. 19-20117, 2020 WL 7183509, at *4 (D.N.J. Sept. 17, 2020). A breach of the implied covenant of good faith and fair dealing claim, however, can be dismissed at the motion to dismiss stage if the allegations that form the basis of the breach of contract claim are the same as those that

8

form the basis of the implied covenant claim or "where it is undisputed that a valid and unrescinded contract governs the conduct at issue." *Spellman v. Express Dynamics, LLC*, 150 F. Supp.3d 378, 390 (D.N.J. 2015); *see also Beaman v. Bank of Am., N.A.*, Civ. No. 21-2056, 2023 WL 4784254, at *16 (D.N.J. July 27, 2023) (dismissing the plaintiffs' claims for breach of the implied covenant of good faith and fair dealing as duplicative of their breach of contract claims where the implied covenant claims were "alleged as breaches of the parties' express contract").

Although Plaintiff's claim for breach of the implied covenant of good faith and fair dealing in the Amended Complaint rests on similar factual allegations as its breach of contract claim (*see* Am. Compl. ¶¶ 29-34, 42-48), the Court will allow the implied covenant claim to proceed because it is not clear at this preliminary stage that the express terms of a valid contract govern the conduct at issue to warrant dismissal of Count Three. *See Spellman*, 150 F. Supp. 3d at 390 ("[W]here a contract's existence or its specific terms are disputed, a court may allow breach of contract claims to proceed through discovery or trial alongside alternative causes of action."); *see also* Fed. R. Civ. P. 8(d) (permitting parties to plead multiple claims alternatively or hypothetically). Here, Defendant disputes that a valid contract exists between the parties. (Br. at 17-21). Further, the parties dispute the terms and nature of the alleged contractual obligations, and the breach of the implied covenant of good faith and fair dealing claim focuses on Plaintiff's inability to exercise other remedies that would have been available under the NSA. Accordingly, the Court cannot determine at this stage whether the conduct alleged in Count Three "differs from a literal violation of . . . a pertinent express term" or is governed by the express terms of a valid contract to warrant dismissal. *Spellman*, 150 F. Supp. 3d at 390. Therefore, the Court will not dismiss Count Three at this preliminary stage.

### E. **Plaintiff Adequately Alleges a Promissory Estoppel Claim (Count Four).**

Under New Jersey law, a plaintiff must establish the following elements to maintain a claim of promissory estoppel: "'(1) a clear and definite promise; (2) made with the expectations that the promissee will rely on it; (3) reasonable reliance; and (4) definite and substantial detriment.'" *Scagnelli v. Schiavone*, 538 F. App'x 192, 194 (3d Cir. 2013) (quoting *Toll Bros. v. Bd. of Chosen Freeholders*, 944 A.2d 1, 19 (N.J. 2008)). The "clear and definite promise" requirement is considered the "'*sine qua non* for applicability of this theory of recovery.'" *Watson v. City of Salem*, 934 F. Supp. 643, 661 (D.N.J. 1995) (quoting *Malaker Corp. Stockholders Protective Comm. v. First Jersey Nat'l Bank*, 395 A.2d 222, 230 (N.J. Super. App. Div. 1978), *certif. denied*, 401 A.2d 243 (N.J. 1979)). Accordingly, indefinite promises or promises subject to change by the promisor are not "clear and definite" and cannot give rise to a claim for promissory estoppel. *Aircraft Inventory Corp. v. Falcon Jet Corp.*, 18 F. Supp. 2d 409, 416 (D.N.J. 1998). Further, "breach of contract and promissory estoppel may be alternatively pled. Nonetheless, promissory estoppel cannot be enforced when a court finds that the parties have entered into an enforceable contract." *Corps Logistics, LLC v. Dutil*, No. 20-6683, 2021 WL 795198, at *10 (D.N.J. Feb. 28, 2021) (internal citations omitted).

The parties dispute whether Plaintiff has satisfactorily pled the elements for promissory estoppel. (Br. at 24-29; Opp'n at 13-18). The Court first notes the crux of Defendant's arguments as it pertains to the promissory estoppel claim focuses on the language in the Single Case Agreement. (*See* Br. at 24-29). However, as discussed *supra*, the Court declines to analyze the language of the Single Case Agreement at this time and whether it precludes this cause of action because the parties extensively contest its enforceability.

Focusing on the allegations set forth in the Amended Complaint, the Court finds Plaintiff has adequately pled a promissory estoppel claim to survive the motion to dismiss stage. First, the

10

Amended Complaint outlines a "clear and definite promise" made by Defendant as it is alleged that Defendant promised to reimburse Plaintiff's medical services at a rate of $207,862.50 for the PLIF portion, $189,750.00 for the ALIF portion of Patient's surgeries and confirmed this in written Single Case Agreements.  (Am. Compl. ¶¶ 12-13, 50).  Further, the Amended Complaint alleges that by agreeing to the Single Case Agreements, Plaintiff's reliance was reasonable and Plaintiff was precluded from electing to pursue arbitration to determine the appropriate reimbursement rate during the thirty-day negotiation period.  (*Id.* at ¶¶ 9-11, 18, 54).  Moreover, Plaintiff alleges it has been damaged as a result of Defendant's failure to abide by the terms of the Single Case Agreement, at least in the amount of $186,712.23, the balance due and owed in accordance with the Single Case Agreement for the ALIF portion of Patient's procedure.  (*Id.* at ¶¶ 25-26, 55-56).

The Court, at this stage, "must accept all of the complaint's well-pleaded facts as true[.]" *Fowler*, 578 F.3d at 210.  Plaintiff has adequately pled a claim for breach of contract. [5]

## IV.    CONCLUSION

For the reasons set forth above, Defendant's motion to dismiss (ECF No. 16) is **DENIED**. An appropriate Order accompanies this Opinion.

**DATED**: March 31, 2025

JULIEN XAVIER NEALS
**United States District Judge**

---

[5] The Court notes the parties did not address whether the causes of action in the Amended Complaint were preempted by the Employee Retirement Income Security Act of 1974 ("ERISA").  As such, the Court declines to address this issue in its Opinion.